at all. Lauren McRoy Prudy is here for Appellate Culver. Herbert Stanley Lindsey is here for Withers. And Ms. Prudy, you may begin when you're ready. Good morning. My name is Lauren Prudy. I'm with the law firm of Guns Territory and Stewart. And with me at council table is my associate Pierce Gibney. Together we represent the appellant Brian Culver. The issue in this appeal is whether FCI Marianna's policy, a blanket policy that operates to prohibit any inmate convicted of a sex offense from receiving in the mail pictures from family members that are minor family members simply because they are not the inmates biological or adopted child violated Mr. Culver's First Amendment rights under Turner v. Safley. The application of the policy in this case resulted in Mr. Culver's pictures of his family on vacation to the Baseball Hall of Fame at Cooperstown being confiscated from him. And that's in the sealed documents in the appendix at A1 through A3. Where is he? Where is Mr. Culver currently incarcerated? He is currently incarcerated at FCI Marianna at Judge Branch. We actually checked this morning so we could confirm for the court. The district court's order dismissing Mr. Culver's pro se complaint with prejudice at the motion to dismiss stage should be reversed at least as to Mr. Culver's claim for injunctive relief for three reasons. First, the district court failed to liberally construe Mr. Culver's pro se complaint as raising both a facial and as applied challenge. So you're agreeing that he didn't get money damages, but he may be entitled to injunctive relief if we agree with you. Is that right? Yes, Judge Wilson. We we would concede at oral argument that particularly in light of the Supreme Court's recent decisions and Ziegler and Hernandez arguing for an extension of a Bivens remedy to the First Amendment is is not where we should be spending our time today. But and I think it's also notable that in this case, both the appellees below and the district court focused almost the entirety of their analysis on whether Mr. Culver had stated a Bivens claim and whether there was an application of applied qualified immunity. And in reality, really, the gravamen of Mr. Culver's claim and what we're here to talk about today is whether or not he would be entitled to injunctive relief under Turner versus Safley based on an application of the policy to the facts of his case. The second reason why this court should reverse the judgment of the district court is that Mr. Culver's complaint did properly plead a First Amendment claim under Turner versus Safley because FCI Marianna's policy is not reasonably related to a legitimate penalogical interest. And third to your first question, Judge Branch, to the extent the district court's order could somehow be construed as finding Mr. Culver failed to present evidence. His claim was not moot. That was an abuse of discretion because Mr. Culver wasn't afforded the opportunity to present evidence. He would be returned to FCI Mariana after, as he noted in his response to the court's order to show cause, it was repaired from Hurricane Michael. And again, Mr. Culver resides at FCI Mariana today. So he can have, according to this policy, he can have pictures of his family members with him in prison, but he cannot have pictures of minors who are not his biological children, which would exclude his nieces and nephews. Right? Yes, Judge Wilson. The way that the policy, as he alleges it in his amended complaint, works is there is a blanket policy that any inmate convicted of a sex offense cannot have any pictures of minors whatsoever sent to them in the mail that are not their biological or adopted children. But we know the policy is something, sorry. So my question is, and I think your brother is going to argue that the policy provides sufficient alternative means. He can possess photos of adult family members and his children. So. Your Honor. How are you going to respond to that? Judge Wilson, there's two ways to respond to that. First is Turner is a four factor test. It's not an elements test. It's four factors. This court in the Pesce case recognized that is four factors that are weighed by the court and not simply four elements that have to be met to state a claim. That's the first point. Second, we would argue as to that element that there aren't sufficient alternative means. Mr. Culver, by operation of this policy, cannot have pictures of his nephews who are permitted and do visit him at the facility. He can't have pictures from them. He can't get Christmas cards. Someday when his nephews get married and have children of their own, he cannot get a birth announcement from his nephews. So it's not an alternative means because he cannot get the content that this policy restricts. And in light of the other four factors of the other three factors in Turner, the policy is not reasonably related. But he can have photographs of his family, including his children, even if there are minors, just not those with images of minor children who are not his own, which would include his nephews. Yes, Your Honor, except that the policy is irrational because as Mr. Culver noted in his response to the court's report and recommendation, he has access at the facility to books and magazines that have pictures of strangers' children on them, as long as they're not sexually explicit in nature. So the policy is not rationally related to the stated interest of reducing recidivism generally, and certainly as to his individualized facts of his risk of recidivism, because he has access to pictures that are of strangers. And additionally, Mr. Culver has alleged that he entered the facility and was evaluated to have no risk of recidivism. Let me get you to turn to the fourth factor of Turner, because you're talking about what alternatives exist under the prison policy. I want to turn to the alternatives that you're proposing. So the fourth factor of Turner says, if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, the court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. Which, if any, of your alternatives would come at a de minimis cost to the prison? Judge Branch, at the motion to dismiss stage and based solely on the pleadings, Mr. Culver's identified at least three alternatives that, at least on their face, appear to satisfy that de minimis test. And that's in the supplemental appendix at page 136. First, he noted that the facility could approve all pictures of minors that are permitted to visit him at the facility. He also noted that the facility could approve pictures taken in the visitation room. Additionally, he pointed out that the facility already has a correctional management plan process that monitors inmates on their individualized risk-relevant behavior. And if they are found to have engaged in risk-relevant behavior, the facility can screen their mail, prevent them from having pictures, images, or other content that is risk-relevant to them. And at the motion to dismiss stage, because his facts were taken as true and Mr. Culver, I think, admirably represented himself pro se, both in the district court and through the initial appellate briefing before this court, he has met that initial gatekeeping standard. But you would acknowledge that all of the alternatives that you have just proposed involve a much more hands-on approach from the prison. Right now, all they have to do with Mr. Culver is they have to know if he has children, and those children, they can monitor for those photos. If you expand that universe, that puts an enormous burden on the prison to make sure, okay, this is a child that has visited you at the prison. This photo, and we all know that photos sometimes don't look like the person in the photo, so they're having to screen for that. How is this not going to cause, and it's not just Mr. Culver, this would have broader application. How does this not represent a significant jump in the administrative burden imposed on a prison? Judge Branch, there's no evidence in the record yet that it does impose any significant administrative burden on the facility. We're only at the motion to dismiss stage. Over and over and over again, the Supreme Court and the Eleventh Circuit has decided issues under Turner after motions for summary judgment or trial. That was the Turner case, the Thornburg case, the Hakeem case, the Harris case, the Pope case, the Pesci case. All of these cases, the inmate pled his claims and the court took discovery to determine whether or not the proffered alternatives, in fact, did present an unreasonable burden on the facility. In fact, this court, in granting Mr. Culver's motion to proceed in form of papyrus, noted that just based on looking at the allegations that he had pled in his pro se complaint, that he seems to have offered several readily available alternatives to the prison policy, which arguably support a facially valid constitutional claim sufficient to survive Rule 12b-6. And that's in the appendix at page 215. So, Judge Branch, your concerns are understandable, but that is why we have discovery. That's why Mr. Culver should be permitted to proceed with discovery and pursue his claims on an as-applied basis. And then the district court, in weighing the Turner factors, can determine whether the apparently readily available alternatives do meet the balancing factors of the Turner test. And additionally, again, Mr. Culver, as we've stated, he's at FCI Mariana today. This policy that is a blanket policy that does not consider his individualized risk of recidivism, his individualized risk-relevant behavior, and considering Mr. Culver alleges he has never engaged in risk-relevant behavior. He has never been put on a correctional management plan, ever, at the entire time he's at the facility. In light of those facts that he has pled in his complaint and the contention that really the pictures that he's seeking, pictures of his family visiting the Hall of Fame at Cooperstown, certainly pictures that are not in any way inappropriate, at least as they appear. He should be permitted to proceed with discovery and prove that this policy is unconstitutional, at least as applied to Mr. Culver individually. How much time is remaining on his sentence? Thirty-five years, approximately, Judge Toflab. Yes, he will not be released. Yes, Mr. Culver is almost 60 years old. He has no prospect of ever being released. If there are no further questions, we reserve remaining time. Thank you, Ms. Prudy. Mr. Lindsey? Good morning. Morning. The institutional supplement policy that we're here discussing today, it does allow Mr. Culver to have photographs of adult family members. It doesn't prevent visitation from minors who come to visit him, but it simply prevents sex offenders, which Mr. Culver is, from possessing photographs of minor children that are not his biological or adopted child. So his minors can visit him in prison?  He can visit his fully clothed teenage nephews, but he just can't have pictures of them in prison. That's the policy that they have. That's correct, Your Honor. This is the only prison in the United States that has a policy like this. That's Mr. Culver's allegation, but I don't know. Which we have to accept is true. Yes, sir. I understand. In this stage of the proceeding. Yes, sir. Okay. Is there anything in the record to suggest that allowing inmates to keep pictures of fully clothed teenage family members has any link to recidivism? No, sir. Well, then, you know, and then, I mean, if that's the case, then, you know, that are you going to establish that it has a legitimate, that the policy has a legitimate and a logical objective? Yes, sir. If I can answer it this way. We don't know anything about the recidivism potential at all. That's correct, Your Honor. Because we're on a complaint. That's correct, Your Honor. If I may answer this way, in my response, I'm not conceding error. But in the magistrate judge's report and recommendation. I guess what I'm getting at is this consideration is premature at this stage. I would tend to agree, Your Honor. I would tend to agree. So, he's plausibly stated a cause of action in his complaint. Yes, sir, but not under Bivens. But not what? Not under Bivens. Oh, not under Bivens. Yes, sir, Your Honor. Why hasn't he? He's stated a claim for injunctive relief, has he not? Yes, sir. Yes, sir. I'm sorry, and we're talking about injunctive relief. I apologize, but yes, for injunctive relief. The damages problem is the Bivens problem. Yes, sir, Your Honor. All right, well, they've conceded they're not going to, they're not entitled to damages. Yes, sir. I understand that. And the reason why I started out answering your question, Your Honor, by saying I'm not conceding, I can't, I'm not conceding error with my response, is that the record needs to be more fully developed in this case, concerning the injunctive relief and the term analysis. So, he doesn't get damages. Everybody's clear about that. He's not entitled to damages. Yes, sir. And so, we're at the pleading stage. He's plausibly alleged a cause of action. So, therefore, if he's plausibly alleged a cause of action, then that ought to decide this case. Yes, sir, Your Honor. I would tend to agree. Nothing further. All right. Thank you, Mr. Lindsay. Ms. Prudy, you've reserved some time for rebuttal if you want to use it. All I have to say to the panel is, as the court in turn recognized, prisoners don't shed their constitutional rights at the prison gates. There's an old saw that says that lawyers sometimes argue too much. And because the appellees have conceded, I'm not going to say anything else. Well, they've conceded and you've made a concession too, right? You're not getting damages. Correct. All right. Thank you. The next case is Eric.